IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | : Civil No. 1:18CV00092<br>:<br>: |
| v. | :<br>: |
| $537,581.00 in U.S. CURRENCY, | :<br>: |
| and | :<br>: |
| $13,097.00 in U.S. CURRENCY,<br>Defendants. | :<br>:<br>: |

## **VERIFIED COMPLAINT OF FORFEITURE**

NOW COMES the Plaintiff, the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This action is brought to enforce the provisions of 18 U.S.C. § 1955(d) and 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property used in violation of, or constituting or derived from proceeds traceable to, a violation of 18 U.S.C. § 1955, or a conspiracy to commit such offense.

2. The defendant currency amounts are $537,581.00 in U.S. Currency and $13,097.00 in U.S. Currency, which was seized on July 6, 2017, in Winston-Salem, North Carolina, in the Middle District of North Carolina, and is currently in the custody of U.S. Customs and Border Protection.

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant properties were seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

5. Upon the filing of this complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6. The facts and circumstances supporting the seizure and forfeiture of the defendant properties are contained in Exhibit A, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant properties; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant properties forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 9th day of February, 2018.

                                      Respectfully submitted,

                                      MATTHEW G.T. MARTIN
                                      United States Attorney

                                      <u>/s/ Lynne P. Klauer</u>
                                      Lynne P. Klauer
                                      Assistant United States Attorney
                                      NCSB #13815
                                      101 S. Edgeworth Street, 4th Floor
                                      Greensboro, NC 27401
                                      Phone: (336) 333-5351
                                      Email: lynne.klauer@usdoj.gov

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

*[signature]*
Donald Carter
Special Agent
Homeland Security Investigations

# DECLARATION

I, Donald Carter, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, state that the following is true and correct to the best of my knowledge and belief:

1.  I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18. I am a Special Agent with the United States Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am currently assigned to the Office of the Resident Agent in Charge, Winston-Salem, North Carolina. I have been employed as a Special Agent with DHS/ICE since 2002. Prior to that, I was employed as an Agent with the North Carolina Alcohol Law Enforcement Division since 1990. I completed the Federal Criminal Investigator Training Program and the Customs Basic Enforcement School at the Federal Law Enforcement Training Center in Glynco, Georgia as well as the North Carolina Alcohol Law Enforcement Basic School and was a state certified officer.

2.  This declaration is based on my own knowledge and experience as well as information provided by other federal, state and local law enforcement agencies.

3.  Set forth below are the reasons why the property known at $537,581.00 in U.S. Currency and $13,097.00 in U.S. Currency, which were seized from Hongmei ZHOU of Winston-Salem, North Carolina, and AA SWEEPSTAKES, 3010 Healy Drive, Winston-Salem, North Carolina, are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1955 and/or Title 18, United States Code, Section 981.

GOVERNMENT EXHIBIT A

4. This forfeiture action arises from investigations of ZHOU, dba AA SWEEPSTAKES' illegal gambling and/or money laundering activities in the city of Winston-Salem, North Carolina.

**INVESTIGATIVE BACKGROUND**

5. In May 2017, HSI, North Carolina Alcohol Law Enforcement (ALE), and Winston-Salem Police Department (WSPD) received information alleging locations within their respective jurisdictions were operating illegal gambling and/or sweepstakes machines and/or games and/or engaging in money laundering in addition to other financial crimes both known and unknown.

6. WSPD, HSI, and ALE conducted an investigation into allegations that employees of ZHOU, dba AA SWEEPSTAKES, were operating illegal gambling and/or sweepstakes based gaming machines and/or subsequently laundering said funds received by AA SWEEPSTAKES in the course of their daily business operations.

7. ZHOU was found to reside in Winston-Salem, North Carolina.

8. AA SWEEPSTAKES is believed to be co-owned by James Monaghan and Hongmei ZHOU under the limited liability company, Xinglong Management Corporation LLC. A search of the North Carolina Secretary of State (NC SOS) website revealed that Xinglong Management Corporation LLC was formed on September 26, 2011. The website listed two members/organizers, Jingzhen Zhou and Hongmei ZHOU. ZHOU is the registered agent of Xinglong Management Corporation LLC, using her home address in Winston-Salem, North Carolina to conduct business. As of February 7, 2018, the NC SOS website now shows an address of Peters Creek Parkway, Suite K, Winston-Salem, North Carolina as the principal office, registered office, and regular mailing address.

9. NC SOS documents from 2016 reflect J & J Leasing Group LLC shared the same address associated with AA SWEEPSTAKES. The website listed James Monaghan as the registered agent with this same address and an "administrative agent," Sally Monaghan.

**<u>UNDECOVER OPERATIONS AT AA SWEEPSTAKES</u>**

10. On June 29, 2017, ALE Special Agent (SA) S. Abernathy and SA K. Brandsema entered AA SWEEPSTAKES, 3010 Healy Drive, Suite 300, Winston-Salem, North Carolina, in an undercover capacity.

11. SA Abernathy has special instruction and training during his law enforcement career dealing with video gaming machines, electronic gaming machines, illegal slot machines, illegal gambling and gaming devices, modern slot machines and server-based gaming machines.

12. SA Abernathy has conducted previous investigations into the illegal operations of gambling, slot machines, and video gaming devices in the capacity of a law enforcement case agent and a law enforcement undercover agent, which has resulted in the seizure of hundreds of illegal slot machines and over a million dollars in U.S. currency and property within North Carolina.

13. They observed approximately sixteen (16) cabinet-style video gaming machines and approximately sixty (60) server-based video gaming machines operating Fantasy and Typhoon software. Based on prior experience, SA S. Abernathy identified the video gaming machines to be illegal under North Carolina state criminal law.

14. SA Abernathy spoke with a male employee working at the point of sale area. SA Abernathy approached the employee and asked if the cabinet-style video gaming machines require customers to pay at the machine or at the point of sale area. The employee advised that this depended on the particular machine. SA Abernathy then approached a cabinet-style video game

3

Case 1:18-cv-00092   Document 1-1   Filed 02/09/18   Page 3 of 8

machine that allowed for direct payment. The video gaming machine offered players the option to select from three slot-style games. SA Abernathy selected "Lucky Striker," which is a three liner, three reel slot game with one horizontal "pay line" across the center of the reels. A player wins by lining up certain symbols on the pay line. After each spin, a player can raise or lower one reel by one space to line up a winning combination. SA Abernathy noted that the game would not allow players to proceed with a new spin if they could obtain a winning combination by raising or lowering, a reel. The game would, however, allow players to proceed regardless of which reel the player chose (i.e., the player could lose a round if he selected the wrong reel to raise or lower, even though the possibility of a winning combination existed). After a series of wins and losses, the screen showed that SA Abernathy had won a total of $16.09. SA Abernathy decided to collect his winnings by pressing the "ticket" button on the machine, which caused the machine to print a receipt. SA Abernathy took the receipt to the point of sale area, where the employee collected it and handed SA Abernathy $16.00 in U.S. currency.

15. SA Abernathy determined the video gaming machines appeared to constitute no sweepstakes and required neither skill nor dexterity, and that the element of chance dominated the element of skill on the AA SWEEPSTAKES video gaming machines.

16. On July 5, 2017, SA Abernathy returned to AA SWEEPSTAKES, 3010 Healy Drive, Suite 300, Winston-Salem, North Carolina, in an undercover capacity. SA Abernathy observed the same video gaming machines as he did on June 29, 2017. He observed a Hispanic female employee working at the point of sale area, whom he approached and asked for $60.00 in sweepstakes credit. SA Abernathy handed the employee $60.00 in marked U.S. currency along with identification. The employee presented him with a receipt showing the $60.00 payment and a player pin of "4562202." SA Abernathy sat down at one of the server-based video gaming

4

machines operating Fantasy software. The screen showed nine (9) different slot-style games to select from, including "Legend Poseidon," "Legend of Beast," "Cracker," "Crazy Duck," "Fortune Shamrock," "Amazing 777," "Firey Flame," "Cave," and a foreign language titled ninth game. Before playing, SA Abernathy was prompted to enter his player pin, which he did, and then the computer asked him to agree to the "Sweepstakes Rules."

17. After logging in, SA Abernathy selected "Firey Flame." "Firey Flame" is a three liner, five reel slot game, which displays fifteen (15) windows. A player wins the game if, after activating the reels by pressing the "Reveal" button, certain symbols line up on one or more of the twenty (20) pre-determined pay lines. Following a series of wins and losses, the screen showed that SA Abernathy had won 5,905 credits, equaling $59.05 in U.S. currency. SA Abernathy clicked "log out," causing the screen to display an image of a stop light with red, yellow, and green circles. Two of the three circles flashed two times. SA Abernathy was then presented with the option to replay this sequence or "play" the game. When SA Abernathy pressed the "play" button, he was shown three stoplights displaying different combinations of lights and asked to match one to the lights displayed on the previous screen in order to collect his winnings.

18. After choosing the correct stoplight image, SA Abernathy left the terminal and approached the point of sale area. He handed the employee the receipt containing his pin number. The employee reviewed the receipt, removed $59.00 in U.S. currency from the cash register, and handed it to SA Abernathy. At no time did this employee or any other employee speak with SA Abernathy regarding the purchase of any product, including internet time or services.

19. SA Abernathy again determined the game required neither skill nor dexterity, and that the element of chance dominated the element of skill.

5

**SEARCH F AA SWEEPSTAKES & ZHOU'S RESIDENCE**

20. On July 6, 2017, Investigator J.G. Gordon of the WSPD obtained search warrants for both AA SWEEPSTAKES, 3010 Healy Drive, Winston-Salem, North Carolina and for ZHOU's residence in Winston-Salem, North Carolina. The search warrants were issued by the Honorable D. Hall, NC Superior Court Judge.

21. WSPD and HSI first searched ZHOU's residence. During the search of ZHOU's residence officers discovered $537,581.00 in U.S. currency, financial documents, fifty (50) bank cards/gift cards, and the keys to AA SWEEPSTAKES and its on-site ATM.

22. WSPD proceeded to AA SWEEPSTAKES located at 3010 Healy Drive, Suite 300, Winston-Salem, North Carolina, where they identified and seized video gaming machines, the point of sale computers, numerous boxes of business documents, and $13,097.00 in U.S. currency from cash drawers and the on-site ATM.

**INTERVIEW OF HONGMEI ZHOU**

23. Following the conclusion of both searches, Investigator J.G. Gordon responded to ZHOU's residence to attempt to speak with Hongmei ZHOU. ZHOU agreed to speak with Investigator J.G. Gordon without an attorney present. Investigator Gordon explained the search warrants were related to the illegal sweepstakes business at AA SWEEPSTAKES. ZHOU claimed she sold the business to the Monaghan Company and/or J & J Leasing several years earlier, and she only manages it now. In response, Investigator Gordon asked about a check issued by J & J Leasing LLC, which listed ZHOU's home address, was signed by ZHOU, and referenced "James' rent." ZHOU asserted that, as manager, she was permitted to write checks on behalf of the company.

24. Investigator Gordon asked ZHOU about the large amounts of U.S. currency found at her residence. ZHOU stated she taught music, in addition to managing AA SWEEPSTAKES. Investigator Gordon asked ZHOU if she owned any sweepstakes businesses. After initially denying that she did, ZHOU admitted to owning sweepstakes businesses located at 5530 University Parkway, Winston-Salem, North Carolina, and 3193 Peters Creek Parkway, Winston-Salem, North Carolina.

25. During the interview, ZHOU advised that the company that sold her the video gaming machines had represented that they were legal, and the company had a legal team that would likely defend her.

**CONCLUSION**

26. The investigation described above shows that ZHOU has been engaged in illegal gambling prohibited by 18 U.S.C. §1955. The investigation has shown ZHOU's sweepstakes business employed more than five (5) individuals in the conduct of gambling activities in violation of state law, were in continuous operation for more than 30 days, and had gross income of more than $2,000 per day on numerous days.

27. Based on the foregoing, your declarant maintains there is probable cause to believe that the U.S. currency seized from ZHOU's residence and business location on July 6, 2017, were used in violation of, or constitute or were derived from, illegal gambling as defined in Title 18 United States Code, § 1955(b)(1), or a conspiracy to commit such offense, and are therefore subject to forfeiture to the United States pursuant to Title 18, United States Code, § 981(a)(1)(C) and Title 18, United States Code, § 1955.

This the  9th day of February 2018.

*[signature]*
Donald Carter
Special Agent
Homeland Security Investigations

8